1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | No. CV09-2160-PHX-NVW |
| Plaintiff/Counterdefendant, | **ORDER** |
| vs. | [Not for Publication] |
| HJ Motel, Inc., et al., | |
| Defendants/Counterclaimants. | |

Before the Court is Counterdefendant's Motion to Dismiss the First, Second, and Third Causes of Action in Defendants'/Counterclaimants' Counterclaims and Defendant's Motion for Leave to File [Proposed] First Amended Counterclaims. (Doc. ## 14, 32.)

**I.     Legal Standards**

   **A.     Fed. R. Civ. P. 12(b)(6)**

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

First, allegations in the complaint that are not entitled to the assumption of truth must be identified. *Id.* at 1949, 1951. The principle that all of the allegations in a complaint are accepted as true does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Second, whether the factual allegations plausibly suggest an entitlement to relief must be determined. *Iqbal*, 129 S. Ct. at 1950, 1951. This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, material properly submitted as part of the complaint and documents not physically attached to the complaint whose contents are alleged in a complaint and whose authenticity no party questions may be considered. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**B.    Fed. R. Civ. P. 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires allegations of fraud to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of

fraud are insufficient." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

**II.     Facts Assumed True**

For this motion to dismiss, Counterplaintiffs' allegations of material fact are assumed to be true and are construed in the light most favorable to them. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions are not assumed to be true. Stated here are the factual allegations of the proposed First Amended Counterclaims, and the Court does not determine whether they are true.

In December 1981, HJ Motel, an Indiana corporation began leasing an existing hotel ("Hotel") in Middletown, Ohio. In 1994, HJ Motel purchased the Hotel. At the time of purchase, the Hotel was operated as a Howard Johnson's Lodge. In September 2000, HJ Motel closed the Hotel for extensive renovation, which included replacing roofing, flooring, plumbing, wiring, furniture, fixtures, and equipment. HJ Motel spent approximately $2.3 million for the renovation and new furniture. About a year later, the Hotel reopened as a Hawthorn Inn & Suites.

In the summer of 2003, HJ Motel contacted Best Western International, Inc. ("Best Western") about the possibility of converting the Hotel to a Best Western facility. Jerry Jobaer, a representative of Best Western, told HJ Motel that because the Hotel had been extensively renovated, Best Western would not require any significant building renovations or purchase of new furniture, but that HJ Motel would have to purchase Best Western signage. Based on Jobaer's representations, HJ Motel representative Maribel Rajani agreed to convert the Hotel to a Best Western.

On September 3, 2003, HJ Motel executed a "Membership Application and Agreement," which is attached to the Complaint and referred to in both the initial Counterclaim and the proposed First Amended Counterclaim. The Membership Application and Agreement has four parts: (1) Application for Membership, (2) Membership Agreement, (3) License Agreement, and (4) General Provisions. In connection with executing the Membership Application and Agreement, HJ Motel paid

Best Western approximately $42,000 for an "entrance fee" that included a non-refundable evaluation fee and an affiliation fee that was refundable if the application was denied or withdrawn before Best Western's approval.

The Membership Agreement required HJ Motel to purchase computer equipment through Best Western to be used by HJ Motel in receiving and sending reservations and in communicating with Best Western and to purchase hardware maintenance through Best Western. It also required HJ Motel to pay a monthly fee for communications equipment provided by Best Western. Best Western was responsible for providing the reservation and communications software to HJ Motel.

The Membership Application and Agreement provides that "Best Western approval may be subject to certain additional applicant-specific conditions which will be communicated in writing along with Best Western's approval of [the] application." Further, "[i]f the approval is subject to certain additional applicant-specific conditions, Applicant may reject the conditions within fifteen (15) days of the notification, in which case the application will be deemed to have been withdrawn." After HJ Motel executed the Membership Application and Agreement and paid the "entrance fee," Best Western demanded multiple changes to the Hotel that required HJ Motel to incur approximately $100,000 in construction costs.

The "Membership Agreement" part of the contract provides that "Best Western is a membership organization providing rights and obligations as set forth by the membership in the 'Bylaws' and as set forth by the Board in the 'Rules and Regulations.'" It provides that an applicant may terminate the Membership Agreement at any time without penalty. It further provides:

> Best Western is a non profit corporation operated on a cooperative basis by and for its hotelier members. The relationship of Best Western to its members is one of an independent contractor. Neither party has the power to obligate or bind the other in any way. No relationship of partners, joint venturers or agents is created. BEST WESTERN ONLY PROVIDES SERVICES AS DIRECTED BY THE MEMBERSHIP. . . . BEST WESTERN HAS NO CONTROL OVER OR RESPONSIBILITY FOR ANY DECISION AFFECTING THE EMPLOYMENT OR SUPERVISION OF ANY PERSON EMPLOYED IN CONNECTION

WITH THE HOTEL.

The Membership Application and Agreement also provides that it "shall be governed and construed according to the laws of the State of Arizona."

Through the Membership Application and Agreement, Best Western licensed the use of its trademarks to HJ Motel beginning on September 3, 2003, and then again on December 1, 2004, December 1, 2005, December 1, 2006, December 1, 2007, and December 1, 2008. The "entrance fee" paid by HJ Motel included payment for the right to use Best Western's trademarks.

The initial term of the membership ended November 30, 2003, but the Hotel did not convert to a Best Western until 2005. The Membership Agreement renewed each December 1 beginning in 2003 through December 1, 2008. From Fall 2003 to Summer 2008, HJ Motel timely made all fee payments due to Best Western and scored well on quality reviews, with one quickly corrected exception. The monthly fees charged by Best Western averaged a total of approximately $5,000 per month and included a fee based on number of rooms available for rent and a fee for use of communications equipment provided by Best Western. HJ Motel also paid an annual membership fee and an annual convention fee. The continuing fees were paid by HJ Motel, in part, for use of Best Western's trademarks.

Best Western exercised significant control over HJ Motel, including through Best Western's "Bylaws" and Best Western's "Rules and Regulations." For example, Best Western dictated the appearance of the Hotel, what was served to guests for breakfast, types of shower curtains, types of bedspreads, appearance of employees, cleanliness and condition of the property, location and size of signage, how room rates may be posted on signage, room guarantee policies, soliciting future reservations, room charges for children, acceptance of approved credit cards, acceptance of reservations through travel agents and payment of commissions, provision of certain amenities and services, and specific features of windows, doors, and locks. As alleged, Best Western arbitrarily

imposes quality assurance requirements and fines, which does not result in promoting uniform quality assurance standards throughout the hotel chain.

In Summer 2008, HJ Motel fell behind in its payment of fees to Best Western due to significant health, weather, and employee embezzlement issues. In November and December 2008, HJ Motel paid approximately $21,000 to Best Western in an attempt to pay past due amounts claimed by Best Western. HJ Motel repeatedly communicated to Best Western regarding its issues and requested a payment plan, but was rebuffed.

In early February 2009, Best Western terminated HJ Motel from the Best Western reservation system, which caused HJ Motel further severe financial distress because reservations from the Best Western system represented a substantial portion of HJ Motel's revenue. On March 26, 2009, Best Western terminated the Membership Agreement.

On October 15, 2009, Best Western initiated this lawsuit, alleging breach of contract, action on an open account, post-termination use of trademarks, federal trademark infringement, false designation of origin and unfair competition, federal trademark dilution, unfair competition and trademark dilution under Arizona law, and common law trademark infringement. On December 8, 2009, HJ Motel filed its Answer and Counterclaims, alleging breach of fiduciary duty, violation of the Arizona Consumer Fraud Act, fraudulent suppression, breach of contract, and breach of implied covenant of good faith and fair dealing. On January 8, 2010, Best Western moved to dismiss HJ Motel's first three counterclaims, *i.e.*, breach of fiduciary duty, violation of the Arizona Consumer Fraud Act, and fraudulent suppression. On February 12, 2010, HJ Motel moved to amend its counterclaims.

## III. Analysis

### A. Count One of Counterclaim: Breach of Fiduciary Duty (Counts One, Two, and Three of Proposed First Amended Counterclaim)

HJ Motel alleges that Best Western owed and breached a fiduciary duty to HJ Motel that was created by a franchiser-franchisee relationship between Best Western and HJ Motel. HJ Motel does not allege any basis other than a franchise relationship for imposing a fiduciary duty on Best Western. Generally, where a special franchiser-franchisee relationship exists, one party may rely for awhile on the other party's representations without investigating their truth. *Mister Donut of America, Inc. v. Harris*, 150 Ariz. 321, 324, 723 P.2d 670, 673 (1986). However, even if a franchise relationship existed between HJ Motel and Best Western, it did not necessarily create a fiduciary relationship.

"A commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity." *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 87, ¶ 32, 118 P.3d 29, 35 (Ct. App. 2005) (no fiduciary relationship existed where the agreement specified the parties were independent contractors and did not purport to create a fiduciary relationship). The Membership Application and Agreement expressly states, "The relationship of Best Western to its members is one of an independent contractor." HJ Motel does not allege any facts from which it can be inferred that Best Western agreed to serve in a fiduciary capacity.

Therefore, Count One of the Counterclaim and Counts One, Two, and Three of the proposed First Amended Counterclaim fail to state a claim upon which relief can be granted.

### B. Count Two of Counterclaim: Violation of the Arizona Consumer Fraud Act (Counts Four and Five of Proposed First Amended Counterclaim)

A.R.S. § 44-1522(A) declares the use of "any deception, . . ., misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or

advertisement of any merchandise" to be an unlawful practice. Under A.R.S. § 12-541, an action based on liability created by an Arizona statute must be initiated within one year after the cause of action accrues. *Alaface v. Nat'l Investment Co.*, 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (Ct. App. 1994). Therefore, an action under the Arizona Consumer Fraud Act must be filed within one year of the cause of action accruing. *Id.* A cause of action for consumer fraud accrues when the customer discovered or with reasonable diligence could have discovered both the "what" and "who" elements of the fraud. *Id.*; *Teran v. Citicorp Person-to-Person Financial Ctr.*, 146 Ariz. 370, 377, 706 P.2d 382, 389 (Ct. App. 1985).

Count Two of the Counterclaim and Counts Four and Five of the proposed First Amended Counterclaim allege that Best Western was required to provide HJ Motel a Uniform Franchise Offering Circular and then a Federal Disclosure Document in September 2003, and then prior to renewal each year in 2004 through 2008. If, as alleged, Best Western did not provide HJ Motel with information regarding estimated initial investment costs for purchase of a Best Western franchise and post-termination fees, HJ Motel knew or with reasonable diligence likely could have discovered both the "who" and the "what" elements of fraud shortly after September 2003, and no later than 2005 when the Hotel converted to a Best Western. Thus, the limitations period for an action under the Arizona Consumer Fraud Act expired no later than 2006, three years before HJ Motel filed its Counterclaim, and there is no factual basis for equitably tolling the limitations period.

### C. Count Three of Counterclaim: Fraudulent Suppression (Count Six of Proposed First Amended Counterclaim)

Under A.R.S. § 12-543, an action for fraud must be filed within three years of the time when the defrauded party discovers or with reasonable diligence could have discovered the fraud. *Mister Donut*, 150 Ariz. at 323, 723 P.2d at 672. "As such, it may begin to run before a person has actual knowledge of the fraud or even all the underlying details of the alleged fraud." *Id.* The limitations period for a fraudulent concealment

claim runs from the time the aggrieved party knew or should have discovered the fraud. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 130, 412 P.2d 47, 63 (1966).

HJ Motel alleges that "Best Western suppressed the fact that it would require significant changes to the Hotel." If HJ Motel converted the Hotel to a Best Western in 2005, it must have known what changes were required no later than 2005. Thus, the limitations period for an action for fraud expired no later than 2008, a year before HJ Motel filed its Counterclaim, and there is no factual basis for equitably tolling the limitations period.

### D. Count Nine of Proposed First Amended Counterclaim: Violation of the Indiana Deceptive Franchise Practices Act

In Count Nine of its proposed First Amended Counterclaim, HJ Motel alleges that Best Western violated the Indiana Deceptive Franchise Practices Act by terminating the "franchise agreement" in bad faith, unfairly discriminating among its franchisees by waiving certain construction and furniture requirements for some franchisees but not others, unfairly discriminating among its franchisees by arbitrarily and capriciously applying quality assurance standards, and failing to provide ninety days notice of termination. The Membership Application and Agreement expressly provides that it "shall be governed and construed according to the laws of the State of Arizona." Even assuming that "the law of the chosen state [Arizona] would be contrary to the fundamental policy of a state which has a materially greater interest that the chosen state in the determination of the particular issue," Restatement (Second) of Conflict of Laws § 187(2)(b), Indiana plainly is not that state. The Hotel is in Ohio, and Indiana is merely the state of incorporation of Plaintiff. The proposed First Amended Counterclaim alleges no basis for applying the Indiana Deceptive Franchise Practices Act contrary to an express choice of Arizona law provision in the parties' agreement.

## IV. Leave to Amend

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But, "[f]utility of amendment can, by itself, justify the denial of a motion for

leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). HJ Motel has unsuccessfully attempted to cure deficiencies in Counts One, Two, and Three of the Counterclaim, and further amendment would be futile. Count Nine of the proposed First Amended Counterclaim seeks to apply Indiana law contrary to the parties' express choice of Arizona law, and amendment of a claim under Indiana law would be futile.

Best Western does not seek dismissal of Counts Four (breach of contract) and Five (breach of the implied covenant of good faith and fair dealing) of the Counterclaim, which are restated as Counts Seven and Eight of the proposed First Amended Counterclaim, or oppose the minor amendment to Count Five, which is included in Count Eight of the proposed First Amended Counterclaim.

IT IS THEREFORE ORDERED that Counterdefendant's Motion to Dismiss the First, Second, and Third Causes of Action in Defendants'/Counterclaimants' Counterclaims (doc. # 14) with prejudice is granted.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File [Proposed] First Amended Counterclaims (doc. # 32) is denied except to replace "HJ Motel" with "Best Western" in Count Five, paragraph 160, of the Counterclaim.

DATED this 4th day of May, 2010.

_____
Neil V. Wake
United States District Judge